[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONRE: APPELLATE COUNSEL'S REQUEST FORPERMISSION TO WITHDRAW APPEARANCE
HISTORY
On February 5, 1997, following a three day court trial before Norko, Langenbach, and Smith, Js., the defendant was convicted of the crime of murder in violation of Conn. Gen. Stat. Sec. 53a-54a. On March 26, 1997, the three judge panel sentenced the defendant to a fifty year prison sentence. The defendant elected a court trial before a three-judge panel pursuant to Conn. Gen. Stat. Sec. 54-82, and was thoroughly canvassed concerning this election by Norko, J. on January 30, 1997 in compliance with Practice Book Sec. 839.
Pursuant to Practice Book Sec. 4035 and 952-56, appellate counsel has moved for permission to withdraw his appearance concluding that an appeal in this case would be wholly frivolous. See Andres v. California, 386 U.S. 738 (1967), and Statev. Pascucci, 161 Conn. 882 (1971). Appellate counsel certified that the brief and motion were mailed first class to the defendant.
FACTS OF CASE:
After a full examination of the trial transcript, the court adopts and finds the facts as summarized by appellate counsel to be an accurate rendition. This court, therefore, quotes the CT Page 1568 summary of facts from appellate counsel's brief.
"A. State's Evidence
Thomas Kieselback, a Hartford police officer, testified that on July 3, 1994 at approximately 2:38 a.m. he responded to a dispatch regarding a serious assault at 44 Benton Street, Hartford. Tr. 2/3/97 at 7. He observed the victim, known as "Crispy," lying on the street in a pool of blood. He had been stabbed. Tr. 2/3/97 at 11-12.
Oscar Delima, another Hartford police officer, testified that he also responded to the dispatch and observed a female, later identified as Janette Reyes, holding the victim Lazaro Rodriguez (Crispy) in the middle of the street. Tr. 2/3/97 at 16.
Ms. Reyes testified that after leaving Club Mirage that evening, she arrived home at 35 Benton Street, Hartford, where she and two friends, Elizabeth Acosta and Carmen Reyes, had a conversation on the sidewalk. Tr. 2/3/97 at 21-2. The victim Lazaro Rodriguez then arrived. Tr. 2/3/97 at 22.
After Carmen Reyes left, the defendant Arnaldo Saez, known as "Trigger," arrived in a van on the passenger side. Tr. 2/3/97 at 30. He loudly asked the group assembled, including the victim Lazaro Rodriguez, "Who owns this street?" Tr. 2/3/97 at 33. Ms. Reyes understood the question to mean, "Whose [drug dealing] territory was it?" Tr. 2/3/97 at 34. Ms. Reyes also testified that an abandoned building on the street had Trigger's name written on it. Tr. 2/3/97 at 35. The "TSO" written below Trigger's name meant "The Solid Ones," Tr. 2/3/97 at 35, or Los Solidos, a gang. Trigger's name also appeared on a light pole on the street. Tr. 2/3/97 at 37.
The defendant then asked again, "Who owns this street?" and asked Crispy, "Where do you live?" Tr. 2/3/97 at 39. After Crispy walked up to the van, saying "What do you mean? You know where I live," Tr. 2/3/97 at 40, Trigger punched Crispy in the face. Tr. 2/3/97 at 41.
After Crispy hit Trigger back, Tr. 2/3/97 at 41, Trigger got out of the van, and the two parties continued to punch each other. Tr. 2/3/97 at 42. About five minutes into the fight, Trigger pulled out a pocket-knife and stabbed the victim four CT Page 1569 times in the chest, according to Ms. Reyes. Tr. 2/3/97 at 47. After the last stab wound, the defendant told the victim, "You dead man. You dead." Tr. 2/3/97 at 51. The defendant got in the van and left. Tr. 2/3/97 at 53. The victim got dizzy and fell on the witness. Id. On cross-examination, Ms. Reyes did admit that Crispy was winning the fight when the defendant pulled out the knife. Tr. 2/3/97 at 80.
Next, one Jacqueline Reyes testified that earlier on the same evening, at around 7 p. m., the defendant displayed a pocket knife, pointed it at her friend Beatrice' face, and said "[t]hat if anyone started with him they will find out why they call him Trigger." Tr. 2/3/97 at 108-09. At 109. Paul Sherokow, a detective with the Hartford police department, testified that after the incident, the defendant fled to California, where he was arrested by the Los Angeles Police Department. Tr. 2/4/97 at 22. Mr. Sherokow stated that while in custody, after waiving his right to remain silent, the defendant informed him that the incident had been a matter of self-defense. Tr. 2/4/97 at 24. He also stated that he had planned to flee the country and join the French Foreign Legion. Tr. 2/4/97 at 24-5.
At this point in the trial, defense counsel successfully moved, over the state's objection, that the defendant's four-page statement, given to the Los Angeles Police Department and received by the Hartford police upon his arrival in Connecticut, be admitted into evidence as Defendant's Exhibit B. Tr. 2/4/97 at 28.
The next witness for the state, Wayne Coleman, testified that he was the defendant's cellmate while both were incarcerated before the defendant's trial. Tr. 2/4/97 at 33. Mr. Coleman testified that on the evening of the incident, the defendant stated that he had been looking to "take someone out." Id. The defendant also recounted to Mr. Coleman that he stabbed the victim after he felt he was losing the fight. Tr. 2/4/97 at 36. The defendant then described how he fled to New York and then to California. Id.
Dr. Thomas Gilchrist, who performed the autopsy of the victim, testified that there were eight stab wounds on the victim's body. Tr. 2/4/97 at 51.
B. Defendant's Evidence and Closing Argument.
CT Page 1570
The defendant attempted to call Juan Sea as his only witness. When the state objected to his testimony, the court required an offer of proof, which defense counsel made as follows:
 Mr. Sea is going to testify, your Honor, if we can get to it, that he told Mr. Rodriguez approximately five or six hours before the death of Mr. Rodriguez that Mr. Roriguez was forbidden to sell drugs on Franklin Avenue. Then he is also going to testify that on the evening of the event, approximately two hours before the death of Mr. Rodriguez, that Mr. Sea saw Mr. Rodriguez and Ms. Reyes having a fight, an altercation.
Tr. 2/4/97 at 91.
The court sustained the state's objection on relevance grounds, and also because Ms. Reyes, according to the prosecutor, would have had to testify first about the conversation with Mr. Rodriguez; any evidence from Mr. Sea at this point would be extrinsic and collateral. Tr. 2/4/97 at 92.
Mr. Sea then stepped down, and the defense rested without calling any other witnesses. Tr. 2/4/97 at 92." (Defendant's brief, pages 2-4)
CONCLUSION
The defendant's claim was that he acted in self defense. He relied primarily on his statement which he had given to the police in Los Angeles, California. There apparently was no dispute that the defendant had stabbed the victim. The trial court examined the evidence in light of Sec. 52a-19 (self defense) and found that the State's evidence had proven beyond a reasonable doubt that the defendant's actions did not constitute self defense. The trial court also found that the state had proven beyond a reasonable doubt that the defendant had the intent to cause the death of another and that he thereby did cause the death of Lazaro Rodriguez. After a thorough review of the trial transcript by this court, the evidence clearly established that the defendant did not act in self defense. An appeal based on the sufficiency of the evidence would be frivolous.
The only other conceivable ground for an appeal would be the CT Page 1571 exclusion of the testimony of the only defense witness offered at the trial (Juan Sea). In an oral offer of proof, Juan Sea was supposedly prepared to testify that: 1) the victim had earlier in the day been told by him not to sell drugs on Franklin Avenue., and 2) that the victim two hours before his death, had an altercation with the State's witness, Janette Reyes. The trial court sustained an objection to the testimony in regards to these two areas. This court also does not understand how that testimony would be relevant and the trial court's exclusion of such evidence appears clearly within it's discretion.
In conclusion, there were no procedural or evidentiary objections furnishing grounds for reversible error. The evidence was clearly sufficient for a finding of guilty, and the state proved that the defendant did not act in self defense. The exclusion of Juan Sea's testimony based on the offer of proof was proper. There are no grounds for appealing the trial court's judgment against the defendant Arnaldo Saez which would not be wholly frivolous.
The foregoing motion and brief having been considered and after a full examination of the transcript of the case, it is hereby ordered that the motion is Granted.
Patrick J. Clifford, J.